(Slip Opinion) OCTOBER TERM, 2014 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## UNITED STATES *v.* KWAI FUN WONG

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 13–1074.   Argued December 10, 2014—Decided  April 22, 2015*

The Federal Tort Claims Act (FTCA) provides that a tort claim against the United States "shall be forever barred" unless the claimant meets two deadlines.  First, a claim must be presented to the appropriate federal agency for administrative review "within two years after [the] claim accrues."  28 U. S. C. §2401(b).  Second, if the agency denies the claim, the claimant may file suit in federal court "within six months" of the agency's denial.  *Ibid.*

   Kwai Fun Wong and Marlene June, respondents in Nos. 13–1074 and 13–1075, respectively, each missed one of those deadlines.  Wong failed to file her FTCA claim in federal court within 6 months, but argued that that was only because the District Court had not permitted her to file that claim until after the period expired.  June failed to present her FTCA claim to a federal agency within 2 years, but argued that her untimely filing should be excused because the Government had, in her view, concealed facts vital to her claim.  In each case, the District Court dismissed the FTCA claim for failure to satisfy §2401(b)'s time bars, holding that, despite any justification for delay, those time bars are jurisdictional and not subject to equitable tolling.  The Ninth Circuit reversed in both cases, concluding that §2401(b)'s time bars may be equitably tolled.

*Held*: Section 2401(b)'s time limits are subject to equitable tolling. Pp. 4–18.

   (a) *Irwin* v. *Department of Veterans Affairs*, 498 U. S. 89, provides the framework for deciding the applicability of equitable tolling to statutes of limitations on suits against the Government.  There, the

_____

* Together with No. 13–1075, *United States* v. *June, Conservator*, also on certiorari to the same court.

Court adopted a "rebuttable presumption" that such time bars may be equitably tolled. *Id.*, at 95. *Irwin*'s presumption may, of course, be rebutted. One way to do so—pursued by the Government here—is to demonstrate that the statute of limitations at issue is jurisdictional; if so, the statute cannot be equitably tolled. But this Court will not conclude that a time bar is jurisdictional unless Congress provides a "clear statement" to that effect. *Sebelius* v. *Auburn Regional Medical Center*, 568 U. S. ___, ___. And in applying that clear statement rule, this Court has said that most time bars, even if mandatory and emphatic, are nonjurisdictional. See *id.*, at ___. Congress thus must do something special to tag a statute of limitations as jurisdictional and so prohibit a court from tolling it. Pp. 4–7.

   (b) Congress did no such thing in enacting §2401(b). The text of that provision speaks only to a claim's timeliness; it does not refer to the jurisdiction of the district courts or address those courts' authority to hear untimely suits. See *Arbaugh* v. *Y & H Corp.*, 546 U. S. 500, 515. Instead, it "reads like an ordinary, run-of-the-mill statute of limitations." *Holland* v. *Florida*, 560 U. S. 631, 647. Statutory context confirms that reading. Congress's separation of a filing deadline from a jurisdictional grant often indicates that the deadline is not jurisdictional, and here the FTCA's jurisdictional grant appears not in §2401(b) but in another section of Title 28, §1346(b)(1). That jurisdictional grant is not expressly conditioned on compliance with §2401(b)'s limitations periods. Finally, assuming it could provide the clear statement that this Court's cases require, §2401(b)'s legislative history does not clearly demonstrate that Congress intended the provision to impose a jurisdictional bar. Pp. 7–9.

   (c) The Government's two principal arguments for treating §2401(b) as jurisdictional are unpersuasive and foreclosed by this Court's precedents. Pp. 9–17.

      (1) The Government first points out that §2401(b) includes the same "shall be forever barred" language as the statute of limitations governing Tucker Act claims, which this Court has held to be jurisdictional. See*, e.g.*, *Kendall* v. *United States*, 107 U. S. 123, 125–126. But that phrase was a commonplace in statutes of limitations enacted around the time of the FTCA, and it does not carry talismanic jurisdictional significance. Indeed, this Court has construed the same language to be subject to tolling in the Clayton Act's statute of limitations. See *American Pipe & Constr. Co.* v. *Utah*, 414 U. S. 538, 559. And in two decisions addressing the Tucker Act's statute of limitations, the Court has dismissed the idea that that language is jurisdictionally significant. See *Irwin*, 498 U. S., at 95; *John R. Sand & Gravel Co.* v. *United States*, 552 U. S. 130, 137, 139. The "shall be forever barred" phrase is thus nothing more than an ordinary way to

Syllabus

set a statutory deadline. Pp. 9–14.

   (2) The Government next argues that §2401(b) is jurisdictional because it is a condition on the FTCA's waiver of sovereign immunity. But that argument is foreclosed by *Irwin*, which considered an identical objection but concluded that even time limits that condition a waiver of immunity may be equitably tolled. See 498 U. S., at 95–96. The Government's invocation of sovereign immunity principles is also peculiarly inapt here. Unlike other waivers of sovereign immunity, the FTCA treats the Government much like a private party, and the Court has accordingly declined to construe the Act narrowly merely because it waives the Government's immunity from suit. There is no reason to do differently here. Pp. 14–17.

No. 13–1074, 732 F. 3d 1030, and No. 13–1075, 550 Fed. Appx. 505, affirmed and remanded.

   KAGAN, J., delivered the opinion of the Court, in which KENNEDY, GINSBURG, BREYER, and SOTOMAYOR, JJ., joined. ALITO, J., filed a dissenting opinion, in which ROBERTS, C. J., and SCALIA and THOMAS, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

Nos. 13–1074 and 13–1075

UNITED STATES, PETITIONER

13–1074　　　　*v.*

KWAI FUN WONG

UNITED STATES, PETITIONER

13–1075　　　　*v.*

MARLENE JUNE, CONSERVATOR

ON WRITS OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[April 22, 2015]

JUSTICE KAGAN delivered the opinion of the Court.

The Federal Tort Claims Act (FTCA or Act) provides that a tort claim against the United States "shall be forever barred" unless it is presented to the "appropriate Federal agency within two years after such claim accrues" and then brought to federal court "within six months" after the agency acts on the claim. 28 U. S. C. §2401(b). In each of the two cases we resolve here, the claimant missed one of those deadlines, but requested equitable tolling on the ground that she had a good reason for filing late. The Government responded that §2401(b)'s time limits are not subject to tolling because they are jurisdictional restrictions. Today, we reject the Government's argument and conclude that courts may toll both of the FTCA's limitations periods.

I

In the first case, respondent Kwai Fun Wong asserts that the Immigration and Naturalization Service (INS) falsely imprisoned her for five days in 1999. As the FTCA requires, Wong first presented that claim to the INS within two years of the alleged unlawful action. See §2401(b); §2675(a). The INS denied the administrative complaint on December 3, 2001. Under the Act, that gave Wong six months, until June 3, 2002, to bring her tort claim in federal court. See §2401(b).

Several months prior to the INS's decision, Wong had filed suit in federal district court asserting various *non-*FTCA claims against the Government arising out of the same alleged misconduct. Anticipating the INS's ruling, Wong moved in mid-November 2001 to amend the complaint in that suit by adding her tort claim. On April 5, 2002, a Magistrate Judge recommended granting Wong leave to amend. But the District Court did not finally adopt that proposal until June 25—three weeks *after* the FTCA's 6-month deadline.

The Government moved to dismiss the tort claim on the ground that it was filed late. The District Court at first rejected the motion. It recognized that Wong had managed to add her FTCA claim only after §2401(b)'s 6-month time period had expired. But the court equitably tolled that period for all the time between the Magistrate Judge's recommendation and its own order allowing amendment, thus bringing Wong's FTCA claim within the statutory deadline. Several years later, the Government moved for reconsideration of that ruling based on an intervening Ninth Circuit decision. This time, the District Court dismissed Wong's claim, reasoning that §2401(b)'s 6-month time bar was jurisdictional and therefore not subject to equitable tolling. On appeal, the Ninth Circuit agreed to hear the case en banc to address an intra-circuit conflict on the issue. The en banc court held that the 6-

month limit is not jurisdictional and that equitable tolling is available. *Kwai Fun Wong* v. *Beebe*, 732 F. 3d 1030 (2013). It then confirmed the District Court's prior ruling that the circumstances here justify tolling because Wong "exercis[ed] due diligence" in attempting to amend her complaint before the statutory deadline. *Id.*, at 1052.

The second case before us arises from a deadly highway accident. Andrew Booth was killed in 2005 when a car in which he was riding crossed through a cable median barrier and crashed into oncoming traffic. The following year, respondent Marlene June, acting on behalf of Booth's young son, filed a wrongful death action alleging that the State of Arizona and its contractor had negligently constructed and maintained the median barrier. Years into that state-court litigation, June contends, she discovered that the Federal Highway Administration (FHWA) had approved installation of the barrier knowing it had not been properly crash tested.

Relying on that new information, June presented a tort claim to the FHWA in 2010, more than five years after the accident. The FHWA denied the claim, and June promptly filed this action in federal district court. The court dismissed the suit because June had failed to submit her claim to the FHWA within two years of the collision. The FTCA's 2-year bar, the court ruled, is jurisdictional and therefore not subject to equitable tolling; accordingly, the court did not consider June's contention that tolling was proper because the Government had concealed its failure to require crash testing. On appeal, the Ninth Circuit reversed in light of its recent decision in *Wong*, thus holding that §2401(b)'s 2-year deadline, like its 6-month counterpart, is not jurisdictional and may be tolled. 550 Fed. Appx. 505 (2013).

We granted certiorari in both cases, 573 U. S. \_\_\_ (2014), to resolve a circuit split about whether courts may equitably toll §2401(b)'s two time limits. Compare, *e.g.*, *In*

*re FEMA Trailer Formaldehyde Prods. Liability Litigation*, 646 F. 3d 185, 190–191 (CA5 2011) (*per curiam*) (tolling not available), with *Arteaga* v. *United States*, 711 F. 3d 828, 832–833 (CA7 2013) (tolling allowed).[1]  We now affirm the Court of Appeals' rulings.

## II

*Irwin* v. *Department of Veterans Affairs*, 498 U. S. 89, 95 (1990), sets out the framework for deciding "the applicability of equitable tolling in suits against the Government." In *Irwin*, we recognized that time bars in suits between *private* parties are presumptively subject to equitable tolling.  See *id.*, at 95–96.  That means a court usually may pause the running of a limitations statute in private litigation when a party "has pursued his rights diligently but some extraordinary circumstance" prevents him from meeting a deadline.  *Lozano* v. *Montoya Alvarez*, 572 U. S. 1, ___ (2014) (slip op., at 7).  We held in *Irwin* that "the same rebuttable presumption of equitable tolling" should also apply to suits brought against the United States under a statute waiving sovereign immunity.  498 U. S., at 95–96.  Our old "ad hoc," law-by-law approach to determining the availability of tolling in those suits, we reasoned, had produced inconsistency and "unpredictability" without the offsetting virtue of enhanced "fidelity to the intent of Congress."  *Id.*, at 95.  Adopting the "general rule" used in private litigation, we stated, would "amount[ ] to little, if any, broadening" of a statutory waiver of immunity.  *Ibid.*  Accordingly, we thought such a

—————

[1] Although we did not consolidate these cases, we address them together because everyone agrees that the core arguments for and against equitable tolling apply equally to both of §2401(b)'s deadlines. See, *e.g.*, Brief for United States in *June* 15 ("Nothing in the text or relevant legislative history . . . suggests that the respective time bars should be interpreted differently with respect to whether they are jurisdictional or subject to equitable tolling").

presumption "likely to be a realistic assessment of legislative intent as well as a practically useful" rule of interpretation. *Ibid.*

A rebuttable presumption, of course, may be rebutted, so *Irwin* does not end the matter. When enacting a time bar for a suit against the Government (as for one against a private party), Congress may reverse the usual rule if it chooses. See *id.*, at 96. The Government may therefore attempt to establish, through evidence relating to a particular statute of limitations, that Congress opted to forbid equitable tolling.

One way to meet that burden—and the way the Government pursues here—is to show that Congress made the time bar at issue jurisdictional.[2] When that is so, a litigant's failure to comply with the bar deprives a court of all authority to hear a case. Hence, a court must enforce the limitation even if the other party has waived any timeliness objection. See *Gonzalez* v. *Thaler*, 565 U. S. \_\_\_, \_\_\_– \_\_\_ (2012) (slip op., at 5–6). And, more crucially here, a court must do so even if equitable considerations would support extending the prescribed time period. See *John R. Sand & Gravel Co.* v. *United States*, 552 U. S. 130, 133– 134 (2008).[3]

_____

[2] The Government notes, and we agree, that Congress may preclude equitable tolling of even a nonjurisdictional statute of limitations. See Brief for United States in *Wong* 20; *Sebelius* v. *Auburn Regional Medical Center*, 568 U. S. \_\_\_, \_\_\_–\_\_\_ (2013) (slip op., at 6–8, 10–11) (finding a nonjurisdictional time limit not amenable to tolling). And the Government contends in passing that even if §2401(b) is nonjurisdictional, it prohibits equitable tolling. See Brief for United States in *Wong* 20. But the Government makes no independent arguments in support of that position; instead, it relies (and even then implicitly) on the same indicia of congressional intent that, in its view, show that §2401(b)'s time limits are jurisdictional. See *infra,* at 9–10, 14–15. In addressing the Government's predominant, jurisdictional claim, we therefore also deal with its subsidiary one.

[3] The dissent takes issue with the sequence in which we decide the

Given those harsh consequences, the Government must clear a high bar to establish that a statute of limitations is jurisdictional. In recent years, we have repeatedly held that procedural rules, including time bars, cabin a court's power only if Congress has "clearly state[d]" as much. *Sebelius* v. *Auburn Regional Medical Center*, 568 U. S. ___, ___ (2013) (slip op., at 6) (quoting *Arbaugh* v. *Y & H Corp.*, 546 U. S. 500, 515 (2006)); see *Gonzalez*, 565 U. S., at ___– ___ (slip op., at 6–7). "[A]bsent such a clear statement, . . . 'courts should treat the restriction as nonjurisdictional.'" *Auburn Regional*, 568 U. S., at ___–___ (slip op., at 6–7) (quoting *Arbaugh*, 546 U. S., at 516). That does not mean "Congress must incant magic words." *Auburn Regional*, 568 U. S., at ___ (slip op., at 7). But traditional tools of statutory construction must plainly show that Congress imbued a procedural bar with jurisdictional consequences.

And in applying that clear statement rule, we have made plain that most time bars are nonjurisdictional. See, *e.g.*, *id.*, at ___ (slip op., at 8) (noting the rarity of jurisdictional time limits). Time and again, we have described filing deadlines as "quintessential claim-processing rules," which "seek to promote the orderly progress of

---

jurisdictional question, contending that we must do so prior to mentioning *Irwin*'s presumption. See *post*, at 11–12 (opinion of ALITO, J.). We do not understand the point—or more precisely, why the dissent thinks the ordering matters. When Congress makes a time bar in a suit against the Government jurisdictional, one could say (as the dissent does) that *Irwin* does not apply, or one could say (as we do) that *Irwin*'s presumption is conclusively rebutted. The bottom line is the same: Tolling is not available. We frame the inquiry as we do in part because that is how the Government presented the issue. See Brief for United States in *Wong* 19 ("One way to show that [*Irwin*'s presumption is rebutted] is to establish that the statutory time limit is a 'jurisdictional' restriction"). And we think that choice makes especially good sense in these cases because various aspects of *Irwin*'s reasoning are central to considering the parties' positions on whether §2401(b) is jurisdictional. See *infra*, at 12–17.

litigation," but do not deprive a court of authority to hear a case. *Henderson* v. *Shinseki*, 562 U. S. 428, 435 (2011); see *Auburn Regional*, 568 U. S., at \_\_\_ (slip op., at 8); *Scarborough* v. *Principi*, 541 U. S. 401, 413 (2004). That is so, contrary to the dissent's suggestion, see *post,* at 4, 10–11, even when the time limit is important (most are) and even when it is framed in mandatory terms (again, most are); indeed, that is so "however emphatic[ally]" expressed those terms may be, *Henderson*, 562 U. S., at 439 (quoting *Union Pacific R. Co.* v. *Locomotive Engineers*, 558 U. S. 67, 81 (2009)). Congress must do something special, beyond setting an exception-free deadline, to tag a statute of limitations as jurisdictional and so prohibit a court from tolling it.

In enacting the FTCA, Congress did nothing of that kind. It provided no clear statement indicating that §2401(b) is the rare statute of limitations that can deprive a court of jurisdiction. Neither the text nor the context nor the legislative history indicates (much less does so plainly) that Congress meant to enact something other than a standard time bar.

Most important, §2401(b)'s text speaks only to a claim's timeliness, not to a court's power. It states that "[a] tort claim against the United States shall be forever barred unless it is presented [to the agency] within two years . . . or unless action is begun within six months" of the agency's denial of the claim. That is mundane statute-of-limitations language, saying only what every time bar, by definition, must: that after a certain time a claim is barred. See *infra*, at 11, n. 7 (citing many similarly worded limitations statutes). The language is mandatory— "shall" be barred—but (as just noted) that is true of most such statutes, and we have consistently found it of no consequence. See, *e.g.*, *Gonzalez*, 565 U. S., at \_\_\_–\_\_\_ (slip op., at 10–11). Too, the language might be viewed as emphatic—"forever" barred—but (again) we have often

held that not to matter.  See, *e.g.*, *Henderson*, 562 U. S., at 439; *Union Pacific*, 558 U. S., at 81.  What matters instead is that §2401(b) "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." *Arbaugh*, 546 U. S., at 515 (quoting *Zipes* v. *Trans World Airlines, Inc.*, 455 U. S. 385, 394 (1982)).  It does not define a federal court's jurisdiction over tort claims generally, address its authority to hear untimely suits, or in any way cabin its usual equitable powers.  Section 2401(b), in short, "reads like an ordinary, run-of-the-mill statute of limitations," spelling out a litigant's filing obligations without restricting a court's authority.  *Holland* v. *Florida*, 560 U. S. 631, 647 (2010).[4]

Statutory context confirms that reading.  This Court has often explained that Congress's separation of a filing deadline from a jurisdictional grant indicates that the time bar is not jurisdictional.  See *Henderson*, 562 U. S., at 439–440; *Reed Elsevier, Inc.* v. *Muchnick*, 559 U. S. 154, 164–165 (2010); *Arbaugh*, 546 U. S., at 515; *Zipes*, 455 U. S., at 393–394.  So too here.  Whereas §2401(b) houses the FTCA's time limitations, a different section of Title 28 confers power on federal district courts to hear FTCA claims.  See §1346(b)(1) ("district courts . . . shall have exclusive jurisdiction" over tort claims against the United States).  Nothing conditions the jurisdictional grant on the

—————

[4] The dissent argues that nonjurisdictional time limits typically mention claimants, whereas §2401(b) does not.  See *post*, at 10.  But none of our precedents have either said or suggested that such a difference matters—that, for example, a statute barring a "tort claim" is jurisdictional, but one barring a "person's tort claim" is not.  See, *e.g.*, *Zipes*, 455 U. S., at 394, and n. 10 (concluding that a time limit did "not speak in jurisdictional terms" even though it did not refer to a claimant). Rather, in case after case, we have emphasized another distinction— that jurisdictional statutes speak about jurisdiction, or more generally phrased, about a court's powers.  See *Auburn Regional*, 568 U. S., at ___ (slip op., at 7); *Reed Elsevier, Inc.* v. *Muchnick*, 559 U. S. 154, 160– 161 (2010); *Arbaugh*, 546 U. S., at 515.

limitations periods, or otherwise links those separate provisions. Treating §2401(b)'s time bars as jurisdictional would thus disregard the structural divide built into the statute.

Finally, even assuming legislative history alone could provide a clear statement (which we doubt), none does so here. The report accompanying the FTCA did not discuss whether §2401(b)'s time limits are jurisdictional. See S. Rep. No. 1400, 79th Cong., 2d Sess., 33 (1946). And in amending §2401(b) four times after its enactment, Congress declined again (four times over) to say anything specific about whether the statute of limitations imposes a jurisdictional bar. Congress thus failed to provide anything like the clear statement this Court has demanded before deeming a statute of limitations to curtail a court's power.

And so we wind up back where we started, with *Irwin*'s "general rule" that equitable tolling is available in suits against the Government. 498 U. S., at 95. The justification the Government offers for departing from that principle fails: Section 2401(b) is not a jurisdictional requirement. The time limits in the FTCA are just time limits, nothing more. Even though they govern litigation against the Government, a court can toll them on equitable grounds.

## III

The Government balks at that straightforward analysis, claiming that it overlooks two reasons for thinking §2401(b) jurisdictional. But neither of those reasons is persuasive. Indeed, our precedents in this area foreclose them both.

## A

The Government principally contends that §2401(b) is jurisdictional because it includes the same language as the

statute of limitations governing contract (and some other non-tort) suits brought against the United States under the Tucker Act. See §2501.[5] That statute long provided that such suits "shall be forever barred" if not filed within six years. Act of Mar. 3, 1863, §10, 12 Stat. 767; see Act of Mar. 3, 1911, §156, 36 Stat. 1139.[6] And this Court repeatedly held that 6-year limit to be jurisdictional and thus not subject to equitable tolling. See *Kendall* v. *United States*, 107 U. S. 123, 125–126 (1883); *Finn* v. *United States*, 123 U. S. 227, 232 (1887); *Soriano* v. *United States*, 352 U. S. 270, 273–274 (1957). When Congress drafted the FTCA's time bar, it used the same "shall be forever barred" language (though selecting a shorter limitations period). "In these circumstances," the Government maintains, "the only reasonable conclusion is that Congress intended the FTCA's identically worded time limit to be a jurisdictional bar." Brief for United States in *Wong* 21–22. According to the Government, Congress wanted the FTCA to serve as "a tort-law analogue to the Tucker Act" and incorporated the words "shall be forever barred" to similarly preclude equitable tolling. Reply Brief in *Wong* 4. (The dissent relies heavily on the same argument. See *post*, at 4–8.)

But the Government takes too much from Congress's use in §2401(b) of an utterly unremarkable phrase. The "shall be forever barred" formulation was a commonplace in federal limitations statutes for many decades surround-

--------

[5] The Tucker Act of 1887, ch. 359, 24 Stat. 505, enlarged the Court of Claims' jurisdiction over contract and other non-tort actions against the Government. The statute of limitations applying to such suits predated the Tucker Act by more than two decades.

[6] During a recodification occurring in 1948 (two years after passage of the FTCA), Congress omitted the word "forever" from the Tucker Act's statute of limitations; since then, it has provided simply that untimely claims "shall be barred." 28 U. S. C. §2501; see §2501, 62 Stat. 976. No party contends that change makes any difference to the resolution of these cases.

ing Congress's enactment of the FTCA.[7]  And neither this Court nor any other has accorded those words talismanic power to render time bars jurisdictional.  To the contrary, we have construed the very same "shall be forever barred" language in 15 U. S. C. §15b, the Clayton Act's statute of limitations, to be subject to tolling; nothing in that provision, we found, "restrict[s] the power of the federal courts" to extend a limitations period when circumstances warrant.  *American Pipe & Constr. Co.* v. *Utah*, 414 U. S. 538, 559 (1974); see *Hardin* v. *City Title & Escrow Co.*, 797 F. 2d 1037, 1040 (CADC 1986) (calling §15(b) "a good example of a non-jurisdictional time limitation" based on its text and separation from the Clayton Act's jurisdictional provisions).[8]  As the Government itself has previously

—————

[7] See, *e.g.*, §6 of the Portal-to-Portal Act of 1947, 61 Stat. 87, 29 U. S. C. §255 (1952 ed.); §3 of the Automobile Dealers' Day in Court Act, 70 Stat. 1125, 15 U. S. C. §1223 (1958 ed.); §111(b) of the National Traffic and Motor Vehicle Safety Act of 1966, 80 Stat. 725, 15 U. S. C. §1400(b) (1970 ed.); §7(e) of the Age Discrimination in Employment Act of 1967 (ADEA), 81 Stat. 605, 29 U. S. C. §626(e) (1970 ed.); §6(c) of the Agricultural Fair Practices Act of 1967, 82 Stat. 95, 7 U. S. C. §2305(c) (1970 ed.); §613(b) of the National Manufactured Housing Construction and Safety Standards Act of 1974, 88 Stat. 707, 42 U. S. C. §5412(b) (1976 ed.).

[8] Even before this Court's decision in *American Pipe*, Courts of Appeals had unanimously construed the Clayton Act's statute of limitations to allow equitable tolling.  See *General Elec. Co.* v. *San Antonio*, 334 F. 2d 480, 484–485 (CA5 1964) (joining six other Circuits in reaching that conclusion).  Similarly, every Court of Appeals to have considered the issue has found that §6 of the Portal-to-Portal Act, which contains the same "shall be forever barred" phrase, permits hearing late claims.  See, *e.g.*, *Hodgson* v. *Humphries*, 454 F. 2d 1279, 1283–1284 (CA10 1972); *Ott* v. *Midland-Ross Corp.*, 523 F. 2d 1367, 1370 (CA6 1975); *Partlow* v. *Jewish Orphans' Home of Southern Cal., Inc.*, 645 F. 2d 757, 760–761 (CA9 1981), abrogated on other grounds by *Hoffmann-La Roche Inc.* v. *Sperling*, 493 U. S. 165 (1989).  And so too Courts of Appeals unanimously found that the ADEA's longtime (though not current) time bar containing that language was subject to tolling.  See, *e.g.*, *Vance* v. *Whirlpool Corp.*, 707 F. 2d 483, 489 (CA4

acknowledged, referring to the "shall be forever barred" locution: "[T]hat type of language has more to do with the legal rhetoric at the time the statute was passed" than with anything else, and should not "make[ ] a difference" to the jurisdictional analysis. Tr. of Oral Arg. in *Irwin*, O. T. 1990, No. 89–5867, p. 30. Or, put just a bit differently: Congress's inclusion of a phrase endemic to limitations statutes of that era, at least some of which allow tolling, cannot provide the requisite clear statement that a time bar curtails a court's authority.

Indeed, in two decisions directly addressing the Tucker Act's statute of limitations, this Court dismissed the idea that the language the Government relies on here has jurisdictional significance. Twice we described the words in that provision as not meaningfully different from those in a nonjurisdictional statute of limitations. And twice we made clear that the jurisdictional status of the Tucker Act's time bar has precious little to do with its phrasing.

We first did so in *Irwin*. Using our newly minted presumption, see *supra*, at 4–5, we decided there that the limitations period governing Title VII suits against the Government, 42 U. S. C. §2000e–16(c) (1988 ed.), allowed equitable tolling. In reaching that conclusion, we compared §2000e–16(c)'s text (then stating that an employee "may file a civil action" within 30 days of an agency's denial of her claim) with the language of the Tucker Act's time bar. We noted that we had formerly held the Tucker Act's limitations statute to "jurisdictionally bar[ ]" late claims, and we acknowledged the possibility of justifying that different treatment by characterizing its "language [as] more stringent than" §2000e–16(c)'s. *Irwin*, 498 U. S., at 94–95. But we rejected that reasoning, instead finding that the two formulations were materially alike. "[W]e are

—————

1983); *Callowhill* v. *Allen-Sherman-Hoff Co.,* 832 F. 2d 269, 273–274 (CA3 1987).

not persuaded," we stated, "that the difference between them is enough to manifest a different congressional intent with respect to the availability of equitable tolling." *Id.*, at 95. Leaving for another day the question of what *did* account for the jurisdictional status of the Tucker Act's time bar, the Court thus ruled out reliance on its language. In other words, on the core question the Government raises here—whether the phrase "shall be forever barred," as used in both the Tucker Act and the FTCA, manifests a congressional decision to preclude tolling— *Irwin* said no.

More recently, *John R. Sand* reaffirmed that conclusion, even as it refused to overturn our century-old view that the Tucker Act's time bar is jurisdictional. No less than three times, *John R. Sand* approvingly repeated *Irwin*'s statement that the textual differences between the Tucker Act's time bar and §2000e–16(c) were insignificant—*i.e.*, that the language of the two provisions could not explain why the former was jurisdictional and the latter not. See 552 U. S., at 137, 139 (calling the provisions "linguistically similar," "similar . . . in language," and "similarly worded"). But if that were so, *John R. Sand* asked, why not hold that the Tucker Act's time limit, like §2000e–16(c), is nonjurisdictional? The answer came down to two words: *stare decisis.* The Tucker Act's bar was different because it had been the subject of "a definitive earlier interpretation." *Id.*, at 138; see *id.*, at 137; *supra*, at 10. And for that reason alone, *John R. Sand* left in place our prior construction of the Tucker Act's time limit. See 552 U. S., at 139 (observing, in Justice Brandeis's words, that "it is more important that" the rule "be settled than that it be settled right" (quoting *Burnet* v. *Coronado Oil & Gas Co.*, 285 U. S. 393, 406 (1932) (dissenting opinion))). What is special about the Tucker Act's deadline, *John R. Sand* recognized, comes merely from this Court's prior rulings, not from Congress's choice of wording.

The Government thus cannot show that the phrase "shall be forever barred" in §2401(b) plainly signifies a jurisdictional statute, as our decisions require. See *supra*, at 6–7.  Unlike in *John R. Sand*, here *stare decisis* plays no role: We have not previously considered whether §2401(b) restricts a court's authority.  What we have done is to say, again and again, that the core language in that provision has no jurisdictional significance.  It is materially indistinguishable from the language in one nonjurisdictional time bar (*i.e.*, §2000e–16(c)).  See *Irwin*, 498 U. S., at 95; *John R. Sand*, 552 U. S., at 137, 139.  And it is identical to the language in another (*i.e.*, 15 U. S. C. §15b). See *American Pipe*, 414 U. S., at 559.  Yes, we have held that the Tucker Act's time bar, which includes those same words, constrains a court's power to hear late claims.  But as we explained in *Irwin*, that is not because the phrase itself "manifest[s] a . . . congressional intent with respect to the availability of equitable tolling."  498 U. S., at 95. The words on which the Government pins its hopes are just the words of a limitations statute of a particular era. And nothing else supports the Government's claim that Congress, when enacting the FTCA, wanted to incorporate this Court's view of the Tucker Act's time bar—much less that Congress expressed that purported intent with the needed clear statement.

B

The Government next contends that at the time of the FTCA's enactment, Congress thought that *every* limitations statute applying to suits against the United States, however framed or worded, cut off a court's jurisdiction over untimely claims.  On that view, the particular language of those statutes makes no difference.  All that matters is that such time limits function as conditions on the Government's waiver of sovereign immunity.  In that era—indeed, up until *Irwin* was decided—those conditions

were generally supposed to be "strictly observed." *Soriano*, 352 U. S., at 276. That meant, the Government urges, that all time limits on actions against the United States "carr[ied] jurisdictional consequences." Brief for United States in *Wong* 34. Accordingly, the Government concludes, Congress "would have expected courts to apply [§2401(b)] as a jurisdictional requirement—just as conditions on waivers of sovereign immunity had always been applied." *Id.*, at 32.

*Irwin*, however, forecloses that argument. After all, *Irwin* also considered a pre-*Irwin* time bar attached to a waiver of sovereign immunity. The Government argued there—anticipating its claim here—that because §2000e–16(c)'s statute of limitations conditioned such a waiver, it must be jurisdictional and not subject to equitable tolling. See Brief for Respondents 6, 10, 14, 19, and Tr. of Oral Arg. 31–37, in *Irwin*, O. T. 1990, No. 89–5867. But *Irwin* disagreed, applying the opposite presumption to a time limit passed two decades earlier. See 498 U. S., at 94–96; *supra*, at 4–5. Justice White protested, much as the Government does now, that at the time of §2000e–16(c)'s enactment, limitations statutes for suits against the Government were "strictly observed" and not amenable to tolling. 498 U. S., at 97 (opinion concurring in part and concurring in judgment) (quoting *Soriano*, 352 U. S., at 276); see 498 U. S., at 99, n. 2. How could an earlier Congress, Justice White asked, have "had in mind the Court's present departure from that longstanding rule"? *Ibid.*; see *post*, at 9 (asking a variant of the same question). But the *Irwin* Court was undeterred. The Court noted that it had not applied the former rule so consistently as Justice White suggested. See 498 U. S., at 94. And the Court doubted that the former approach so well reflected congressional intent: On the contrary, because equitable tolling "amounts to little, if any, broadening of the congressional waiver," we thought that a rule generally *allow-*

*ing* tolling is the more "realistic assessment of legislative intent." *Id.*, at 95; see *supra,* at 4–5. For those reasons, the Court declined to count time bars as jurisdictional merely because they condition waivers of immunity—even if Congress enacted the deadline when the Court interpreted limitations statutes differently.

In the years since, this Court has repeatedly followed *Irwin*'s lead. We have applied *Irwin* to pre-*Irwin* statutes, just as we have to statutes that followed in that decision's wake. See *Scarborough*, 541 U. S., at 420–422; *Franconia Associates* v. *United States*, 536 U. S. 129, 145 (2002). To be sure, *Irwin*'s presumption is rebuttable. But the rebuttal cannot rely on what *Irwin* itself deemed irrelevant— that Congress passed the statute in an earlier era, when this Court often attached jurisdictional consequence to conditions on waivers of sovereign immunity. Rather, the rebuttal must identify something distinctive about the time limit at issue, whether enacted then or later—a reason for thinking Congress wanted *that* limitations statute (not all statutes passed in an earlier day) to curtail a court's jurisdiction. On the Government's contrary view, *Irwin* would effectively become only a prospective decision. Nothing could be less consonant with *Irwin*'s ambition to adopt a "general rule to govern the applicability of equitable tolling in suits against the Government." 498 U. S., at 95.

And the Government's claim is peculiarly inapt as applied to §2401(b) because all that is special about the FTCA cuts *in favor of* allowing equitable tolling. As compared to other waivers of immunity (prominently including the Tucker Act), the FTCA treats the United States more like a commoner than like the Crown. The FTCA's jurisdictional provision states that courts may hear suits "under circumstances where the United States, if a private person, would be liable to the claimant." 28 U. S. C. §1346(b). And when defining substantive liability for

torts, the Act reiterates that the United States is account-
able "in the same manner and to the same extent as a
private individual." §2674. In keeping with those provi-
sions, this Court has often rejected the Government's calls
to cabin the FTCA on the ground that it waives sovereign
immunity—and indeed, the Court did so in the years
immediately after the Act's passage, even as it was con-
struing *other* waivers of immunity narrowly. See, *e.g.*,
*United States* v. *Aetna Casualty & Surety Co.*, 338 U. S.
366, 383 (1949); *Indian Towing Co.* v. *United States*, 350
U. S. 61, 65 (1955); *Rayonier Inc.* v. *United States*, 352
U. S. 315, 319–320 (1957). There is no reason to do differ-
ently here. As *Irwin* recognized, treating the Government
like a private person means (among other things) permit-
ting equitable tolling. See 498 U. S., at 95–96. So in
stressing the Government's equivalence to a private party,
the FTCA goes further than the typical statute waiving
sovereign immunity to indicate that its time bar allows a
court to hear late claims.

## IV

Our precedents make this a clear-cut case. *Irwin* re-
quires an affirmative indication from Congress that it
intends to preclude equitable tolling in a suit against the
Government. See 498 U. S., at 95–96. Congress can
provide that signal by making a statute of limitations
jurisdictional. But that requires its own plain statement;
otherwise, we treat a time bar as a mere claims-processing
rule. See *Auburn Regional*, 568 U. S., at ___, ___ (slip op.,
at 6, 8). Congress has supplied no such statement here.
As this Court has repeatedly stated, nothing about
§2401(b)'s core language is special; "shall be forever
barred" is an ordinary (albeit old-fashioned) way of setting
a deadline, which does not preclude tolling when circum-
stances warrant. See *Irwin*, 498 U. S., at 95–96; *John R.
Sand*, 552 U. S., at 137, 139; *American Pipe*, 414 U. S., at

558–559.  And it makes no difference that a time bar conditions a waiver of sovereign immunity, even if Congress enacted the measure when different interpretive conventions applied; that is the very point of this Court's decision to treat time bars in suits against the Government, whenever passed, the same as in litigation between private parties.  See *Irwin*, 498 U. S., at 95–96; *Scarborough*, 541 U. S., at 420–422; *Franconia*, 536 U. S., at 145.  Accordingly, we hold that the FTCA's time bars are nonjurisdictional and subject to equitable tolling.

We affirm the judgments of the U. S. Court of Appeals for the Ninth Circuit and remand the cases for further proceedings consistent with this opinion.  On remand in *June*, it is for the District Court to decide whether, on the facts of her case, June is entitled to equitable tolling.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

Nos. 13–1074 and 13–1075

_____

UNITED STATES, PETITIONER
13–1074          *v.*
KWAI FUN WONG


UNITED STATES, PETITIONER
13–1075          *v.*
MARLENE JUNE, CONSERVATOR

ON WRITS OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[April 22, 2015]

JUSTICE ALITO, with whom THE CHIEF JUSTICE, JUSTICE SCALIA, and JUSTICE THOMAS join, dissenting.

Our task in these cases is to interpret and enforce a federal statute that specifies the limits of the waiver of sovereign immunity in the Federal Tort Claims Act (FTCA). The FTCA waives the immunity of the United States for certain tort claims but provides that any "tort claim against the United States shall be forever barred unless" it is filed with the appropriate agency "within two years after such claim accrues" and in federal court "within six months after" the agency's final decision. 28 U. S. C. §2401(b). The statutory text, its historical roots, and more than a century of precedents show that this absolute bar is not subject to equitable tolling. I would enforce the statute as Congress intended and reverse.

I

The FTCA is a waiver of sovereign immunity and must be understood in that context. In the 19th and early 20th centuries, Congress was reluctant to allow individual tort

claims against the United States. Instead, it granted
relief to individuals through private laws enacted solely
for those individuals' benefit. These waivers of sovereign
immunity were surgical and sporadic, but "notoriously
clumsy," and by 1946 Congress thought it better to adopt a
"simplified" approach. *Dalehite* v. *United States*, 346 U. S.
15, 24–25 (1953). The FTCA thus waived sovereign im-
munity for tort claims against the Government and set out
a procedure for adjudicating those claims.

This waiver of sovereign immunity was no trivial mat-
ter. Long before the FTCA, Congress authorized suits
against the Government for contract and property claims
under the Tucker Act and a number of predecessor stat-
utes, but the Tucker Act excluded tort claims from its
waiver of sovereign immunity. The concern was obvious:
As opposed to the more predictable nature of contractual
and property claims, tort-based harms are sometimes
unperceived and open-ended. Even frivolous claims re-
quire the Federal Government to expend administrative
and litigation costs, which ultimately fall upon society at-
large. For every dollar spent to defend against or to sat-
isfy a tort claim against the United States, the Government
must either raise taxes or shift funds originally allocated
to different public programs.

To reduce these risks, Congress placed strict limits on
the FTCA's waiver of sovereign immunity. The statute
"exempts from [its] waiver certain categories of claims,"
*Ali* v. *Federal Bureau of Prisons*, 552 U. S. 214, 218 (2008),
and includes a broad exemption for claims "arising out of
assault, battery, false imprisonment, false arrest, mali-
cious prosecution, abuse of process, libel, slander, misrep-
resentation, deceit, or interference with contract rights."
28 U. S. C. §2680(h); see also §§2680(a)–(n). In addition,
in order to limit the scope and unpredictability of the
Government's potential liability, the Act exempts from the
waiver of sovereign immunity certain types of recovery,

such as prejudgment interest and punitive damages. See §2674.

Most relevant here, the FTCA "condition[s]" its waiver of sovereign immunity on strict filing deadlines. *United States* v. *Kubrick*, 444 U. S. 111, 117 (1979). As enacted in 1946, the Act granted district courts exclusive jurisdiction over tort claims against the Government, "[s]ubject to the [other] provisions of" the Act. FTCA, ch. 753, §410(a), 60 Stat. 843–844. One of those provisions stated that "[e]very claim against the United States cognizable under this title shall be forever barred, unless within one year after such claim accrued . . . it is presented in writing to the [relevant] Federal agency . . . or . . . an action is begun" in federal court. §420, *id.*, at 845. The current version provides in full as follows:

> "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." 28 U. S. C. §2401(b).

## II

The question presented in these two cases is whether the FTCA's filing deadlines are subject to equitable tolling. We must therefore decide (1) whether the deadlines are "jurisdictional" in nature, so that courts are without power to adjudicate claims filed outside their strict limits and (2) if they are not jurisdictional, whether the statute nonetheless prohibits equitable tolling. Both of these inquiries require close attention to the text, context, and history of the Act. And both lead to the conclusion that the FTCA allows no equitable tolling.

A

The FTCA's filing deadlines are jurisdictional. The statute's plain text prohibits adjudication of untimely claims. Once the Act's filing deadlines have run, all untimely claims "shall be forever barred." *Ibid.* These words are not qualified or aspirational. They are absolute. If not filed with the agency within two years, or with a federal court within six months, a claim "shall be" "barred" "forever." "Shall be forever barred" is not generally understood to mean "should be allowed sometimes." The statute brooks no exceptions. And because the filing deadlines restrict the FTCA's waiver of sovereign immunity, they impose a limit on the courts' jurisdiction that "we should not take it upon ourselves to extend." *Kubrick*, *supra*, at 117–118.

For over 130 years, we have understood these terms as jurisdictional. When crafting the FTCA's limitations provision, Congress did not write on a clean slate. Rather, it borrowed language from limitations provisions in the Tucker Act and its predecessor statutes. The 1911 version of the Tucker Act included language that was nearly identical to that in the 1946 version of the FTCA: "Every claim against the United States cognizable by the Court of Claims, shall be forever barred unless the petition setting forth a statement thereof is filed in the court . . . within six years after the claim first accrues." §156, 36 Stat. 1139. That statutory language came, in turn, from the 1863 predecessor to the Tucker Act. See §10, 12 Stat. 767.

As early as 1883, we interpreted these precise terms to impose a "jurisdiction[al]" requirement that the "court may not disregard." *Kendall* v. *United States*, 107 U. S. 123, 125. We emphasized that, when waiving sovereign immunity, Congress "may restrict the jurisdiction of the [courts] to certain classes of demands." *Ibid.* And we held that "[t]he express words of the statute leave no room for contention." *Ibid.* The Court thus had no "authority to

engraft" an equitable tolling provision where Congress had so clearly constrained the judiciary's authority. *Ibid.*

Over the ensuing decades, we repeatedly reaffirmed our interpretation of the phrase. In *Finn* v. *United States*, 123 U. S. 227, 232 (1887), we held that the Government could not waive the jurisdictional time bar and thus that the "duty of the court" was "to dismiss the petition" when a plaintiff raised an untimely claim. We reached the same conclusion in *De Arnaud* v. *United States*, 151 U. S. 483, 495–496 (1894). We reaffirmed the rule in *United States* v. *New York*, 160 U. S. 598, 616–619 (1896), while holding that there *was* jurisdiction where the plaintiff presented its claim before the statutory deadline. And in *Munro* v. *United States*, 303 U. S. 36, 38, n. 1, 41 (1938), we held that a District Court lacked jurisdiction to resolve untimely claims, even if the Government waived any objection, under a different statute that incorporated the Tucker Act's time limits. All the while, the lower courts similarly enforced the deadline as "a jurisdictional requirement, compliance with which is necessary to enable suit to be maintained against the sovereign." *Compagnie Generale Transatlantique* v. *United States*, 51 F. 2d 1053, 1056 (CA2 1931). Thus, by 1946, the phrase "shall be forever barred" was well understood to deprive federal courts of jurisdiction over untimely claims.[1]

The FTCA's statutory terms must be understood in this context. When Congress crafted the FTCA as a tort-based

———————

[1] At times in the past we have too loosely conferred the "jurisdictional" label. See *Steel Co.* v. *Citizens for Better Environment*, 523 U. S. 83, 90 (1998). But our use of the term in this context was conscious, as we recognized in *John R. Sand & Gravel Co.* v. *United States*, 552 U. S. 130, 134 (2008) ("Justice Harlan, writing for the Court, said the statute was 'jurisdiction[al],' . . . and that '*it [was] the duty of the court to raise the [timeliness] question whether it [was] done by plea or not*'" (quoting *Kendall* v. *United States*, 107 U. S. 123, 125 (1883))). And it was correct.

analogue to the Tucker Act, it consciously borrowed the well-known wording of the Tucker Act's filing deadline. Then, as now, it was settled that "[i]n adopting the language used in an earlier act, Congress must be considered to have adopted also the construction given by this Court to such language, and made it a part of the enactment." *Hecht* v. *Malley*, 265 U. S. 144, 153 (1924); see also *Shapiro* v. *United States*, 335 U. S. 1, 16 (1948); *Sekhar* v. *United States*, 570 U. S. ___, ___–___ (2013) (slip op., at 3–4) ("'[I]f a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it'" (quoting Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum. L. Rev. 527, 537 (1947))).

Indeed, Congress considered departing from the Tucker Act's prohibition on equitable tolling, but decided against it. Proposals to include an equitable tolling provision were "included in nine of the thirty-one bills prior to the enactment of the FTCA," but "the Act passed by the 1946 Congress did not provide for any equitable tolling of the limitations periods." Colella & Bain, Revisiting Equitable Tolling and the Federal Tort Claims Act, 31 Seton Hall L. Rev. 174, 195–196 (2000). Instead, it was understood that individuals with claims outside those deadlines could turn to Congress for relief through private bills, as they did before the FTCA's enactment. See *id.,* at 195.[2]

————

[2] Congress has occasionally modified the FTCA's limitations provision. Initially, the Act required plaintiffs to file suit within one year of a claim's accrual, or if the claim was for less than $1,000 to present the claim to the appropriate agency within one year of accrual. FTCA §420, 60 Stat. 845. In 1949, to relieve the hardship of the 1-year deadline, Congress enlarged the filing deadline to two years. Act of Apr. 25, ch. 92, §1, 63 Stat. 62. Then, in 1966, it made the filing of an administrative claim with the appropriate agency a prerequisite to filing suit, and it shortened the litigation filing deadline to six months from the agency's denial of the claim. Act of July 18, §§2(a), 7, 80 Stat. 306, 307. But Congress has never suggested that the deadlines could be excused or

The evidence of statutory meaning does not end there. We reaffirmed the phase's jurisdictional nature in the decades following the FTCA's enactment. In *Soriano* v. *United States*, 352 U. S. 270 (1957), we rejected a request to allow equitable tolling under the Tucker Act. Confirming the connection between the Tucker Act and the FTCA, we noted that "statutes permitting suits for tax refunds, *tort actions*, alien property litigation, patent cases, and other claims against the Government would be affected" if the Court allowed equitable tolling under the Tucker Act. *Id.*, at 275 (emphasis added). And in *Kubrick*, 444 U. S., at 117–118, we cited *Soriano*'s warning while emphasizing that the FTCA's time limits are a condition of the Act's waiver of sovereign immunity.

The lower courts also quickly recognized the statutes' common heritage and enforced §2401(b) as a jurisdictional requirement. In *Anderegg* v. *United States*, 171 F. 2d 127, 128 (1948) (*per curiam*), the Fourth Circuit cited *Finn* and *Munro* while holding that the FTCA's filing deadline is a jurisdictional limit that the Government cannot waive. The Fifth Circuit, in *Simon* v. *United States*, 244 F. 2d 703, 705, n. 4 (1957), held that the FTCA's deadline is a jurisdictional condition on the Act's waiver of sovereign immunity and cited *Carpenter* v. *United States*, 56 F. 2d 828, 829 (CA2 1932), a Tucker Act case, to support its holding. And in *Humphreys* v. *United States*, 272 F. 2d 411 (1959), the Ninth Circuit similarly relied on Tucker Act precedents to hold that "the District Court has no jurisdiction over [an untimely FTCA] action," because no waiver of sovereign immunity exists once the filing deadline "has run." *Id.,* at 412 (citing *Edwards* v. *United States*, 163 F. 2d 268, 269 (CA9 1947), in turn citing *Finn* and *Munro*). When Congress amended the FTCA in 1966, it readopted the "forever barred" language against the

———————

enlarged by the courts.

backdrop of *Soriano* and the lower courts' interpretation of the phrase. We must therefore assume that Congress meant to keep the universally recognized meaning of those words. See, *e.g., General Dynamics Land Systems, Inc.* v. *Cline*, 540 U. S. 581, 593–594 (2004).

That meaning, of course, cannot change over time. But even if there were any doubt, we recently reaffirmed our view in *John R. Sand & Gravel Co.* v. *United States*, 552 U. S. 130 (2008). We explained that, unlike run-of-the-mill statutes of limitation, jurisdictional time limits "seek . . . to achieve a broader system-related goal, such as facilitating the administration of claims, limiting the scope of a governmental waiver of sovereign immunity, or promoting judicial efficiency." *Id.*, at 133 (citations omitted). Recounting our decisions in *Kendall*, *Finn*, *De Arnaud*, *New York*, and *Soriano*, we "reiterated" our understanding of the "absolute nature of the court of claims limitations statute." 552 U. S., at 135. And we rejected an invitation to abandon that interpretation, noting that Congress has long accepted our interpretation of the statute. *Id.,* at 139.

The same must be said of the FTCA. As we have often explained, "[w]hen a long line of this Court's decisions left undisturbed by Congress has treated a similar requirement as 'jurisdictional,' we will presume that Congress intended to follow that course." *Henderson* v. *Shinseki*, 562 U. S. 428, 436 (2011) (citation and some internal quotation marks omitted); *Reed Elsevier, Inc.* v. *Muchnick*, 559 U. S. 154, 168 (2010); *Union Pacific R. Co.* v. *Locomotive Engineers*, 558 U. S. 67, 82 (2009). Every single decision from this Court interpreting the Tucker Act's "similar requirement" has treated it as jurisdictional. And there is strong historical evidence that Congress "intended to follow that course." That should be the end of the matter: Section 2410(b)'s filing deadlines are jurisdictional limits that are not subject to equitable tolling.

## B

Even if the FTCA's filing deadlines are not jurisdictional, they still prohibit equitable tolling. To be sure, in recent years, we have grown reluctant to affix the "jurisdictional" label. See, *e.g., Arbaugh* v. *Y & H Corp.*, 546 U. S. 500, 510 (2006); *Henderson, supra,* at 434–436. "But calling a rule nonjurisdictional does not mean that it is not mandatory." *Gonzalez* v. *Thaler*, 565 U. S. ___, ___ (2012) (slip op., at 10). Where Congress imposes an inflexible claims processing rule, it is our duty to enforce the law and prohibit equitable tolling, whether it is jurisdictional or not.

Here, Congress' intent is clear. The words of the statute leave no doubt that untimely claims are never allowed: They are "*forever* barred." This is no weak-kneed command. The history underlying the text only bolsters its apparent meaning, and our repeated reaffirmation of the phrase's meaning should remove any doubt. Congress never meant for equitable tolling to be available under the FTCA.

The only factor pointing in the opposite direction is our suggestion in *Irwin* v. *Department of Veterans Affairs*, 498 U. S. 89, 95–96 (1990), that we would thenceforth apply a rebuttable presumption in favor of equitable tolling in suits against the Government. But it is beyond me how *Irwin*'s judge-made presumption announced in 1990 can trump the obvious meaning of a statute enacted many decades earlier. Cf. *Cannon* v. *University of Chicago*, 441 U. S. 677, 718 (1979) (Rehnquist, J., concurring). In any event, *Irwin*'s rebuttable presumption is overcome in this case. For well over a century, we have recognized the inflexible nature of the Tucker Act's provision. Since its adoption, we have recognized that the FTCA's language bears the same meaning as its Tucker Act companion. See *Soriano, supra*, at 275; *Kubrick, supra*, at 118. And in *John R. Sand & Gravel*, we held that our "definitive ear-

lier interpretation of the" Tucker Act is a "sufficient rebut-
tal" to *Irwin*'s presumption. 552 U. S., at 138. There is no
principled way to distinguish this case. Section 2401(b)
allows no equitable tolling.

### III

The Court's contrary conclusion is wrong at every step.
In its view, §2401(b)'s statutory text is "mundane" lan-
guage that "'reads like an ordinary, run-of-the-mill statute
of limitations.'" *Ante,* at 8. But "ordinary" nonjurisdic-
tional time limits are typically directed at claimants. The
deadline in *Henderson*, for example, required that "*a
person* adversely affected by [a Board of Veterans' Ap-
peals] decision shall file a notice of appeal . . . within 120
days after" the decision. 38 U. S. C. §7266(a) (emphasis
added); 562 U. S, at 438. The "run-of-the-mill" limitations
provision in *Holland* v. *Florida*, 560 U. S. 631, 647 (2010),
likewise applied to the "person" responsible for filing: "A
1-year period of limitation shall apply to an application for a
writ of habeas corpus *by a person* in custody pursuant to
the judgment of a State court." 28 U. S. C. §2244(d)(1)
(emphasis added); 560 U. S., at 635. And the provision at
issue in *Irwin* was similar, if not an even weaker com-
mand. It provided that "'[w]ithin thirty days of receipt of
notice of final action taken by . . . the Equal Employment
Opportunity Commission . . . an *employee or applicant* for
employment . . . *may file* a civil action.'" 498 U. S., at 94
(quoting 42 U. S. C. §2000e–16(c) (1998 ed.); emphasis
added).

Section 2401(b), by contrast, never mentions the claim-
ant, and it is phrased in emphatically absolute terms. It
says unequivocally that untimely tort claims against the
United States "shall be forever barred." Although it does
not use the word "jurisdiction," it speaks at least as much
to the courts (who are "forever barred" from considering
untimely claims) as it does to claimants (who are "forever

barred" from bringing stale claims). More important, though, the words in §2401(b) have a well-known meaning that *ipse dixit* labels cannot overcome.[3]

The majority tells us this "old 'ad hoc,' law-by-law approach"—also known as *statutory interpretation*—has been replaced with a broad presumption in favor of equitable tolling and a judicial preference against jurisdictional labels. *Ante,* at 4. I dispute the premise. But in any event, as I explained above, and as six Members of the current Court held in *John R. Sand & Gravel*, the overwhelming evidence of congressional intent here easily overtakes *Irwin*'s rebuttable presumption. Even if we would rather not call §2401(b)'s deadlines "jurisdictional," with all that label entails, we must nonetheless recognize that Congress never meant to allow equitable tolling.

The majority avoids this latter point by declining to give it any separate attention. See *ante,* at 5, n. 2. But we cannot conflate the two questions because, though the relevant evidence is the same, the analysis is different. In particular, the majority is wrong to rely on *Irwin* when assessing the jurisdictional question, which is the only question it really decides. We do not indulge *Irwin*'s presumption when determining whether a requirement is jurisdictional. Instead, we typically invoke *Irwin* only *after* finding that a requirement is not jurisdictional, to decide whether Congress nonetheless intended to prohibit equitable tolling. In *Henderson*, for instance, we never mentioned *Irwin* because the parties did not ask us to

_____

[3] The majority relies on the fact that we have allowed equitable tolling under "forever barred" language in the Clayton Act. See *ante,* at 10. But there is no evidence that Congress meant to import *that* statute's terms into the FTCA. Nor does the Clayton Act involve the waiver of sovereign immunity for money damages against the Government. The Tucker Act, by contrast, was clearly the blueprint for the FTCA's time bar, it *did* involve a waiver of sovereign immunity, and our cases have uniformly held that its language is *not* subject to equitable tolling.

address whether the rule was "subject to equitable tolling if it [was] not jurisdictional." 562 U. S., at 442, n. 4. Likewise, in *Bowles* v. *Russell*, 551 U. S. 205 (2007), we held that the deadline for filing a notice of appeal is jurisdictional, without a word about *Irwin*.[4] In *Sebelius* v. *Auburn Regional Medical Center*, 568 U. S. ___, ___–___, ___–___, (2013) (slip op., at 6–7, 11–13), we considered *Irwin* only after deciding that a deadline was not jurisdictional. And in *Holland*, we held that the Antiterrorism and Effective Death Penalty Act of 1996's time limits are not jurisdictional, without relying on *Irwin*, and then stated that "[w]e have previously made clear that a nonjurisdictional federal statute of limitations is normally subject to a 'rebuttable presumption' in favor 'of equitable tolling.'" 560 U. S., at 645–646 (quoting *Irwin*, *supra*, at 95–96) (emphasis deleted); cf. *Young* v. *United States*, 535 U. S. 43, 49–50 (2002) (invoking *Irwin* after concluding that a limitations period was not a "substantive" component of the Bankruptcy Code).[5] This error matters because the majority's jurisdictional analysis literally begins and ends with *Irwin*, see *ante,* at 4–5, 18, and thus relies on a presumption that should have no bearing on the question. Without that presumption, the majority could not so readily ignore the unmistakable evidence that §2401(b)'s limits are jurisdictional.

\*   \*   \*

For these reasons, I would hold that §2401(b) does not allow equitable tolling, and I therefore respectfully dissent.

---

[4] Even the dissent in *Bowles* recognized *Irwin*'s irrelevance: It cited the decision only when discussing equitable exceptions to *nonjurisdictional* statutes of limitations. 551 U. S., at 219 (opinion of Souter, J.).

[5] We considered *Irwin* in *John R. Sand & Gravel* while holding that 28 U. S. C. §2501's time limits are jurisdictional. But we did so only to *reject* the suggestion that *Irwin* compelled a contrary result. So there, too, *Irwin*'s presumption did not influence the jurisdictional question. Nor did it influence the outcome in *Irwin* itself, where we held that equitable tolling was not available. See 498 U. S., at 96.