**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARIA ESCOBEDO,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>APPLEBEES,<br>*Defendant*,<br><br>and<br><br>APPLE AMERICAN GROUP; APPLE NEVADA, LLC,<br>*Defendants-Appellee*. | No. 12-16244<br><br>D.C. No.<br>2:11-cv-00895-<br>PMP-CWH<br><br>OPINION |

Appeal from the United States District Court
for the District of Nevada
Philip M. Pro, Senior District Judge, Presiding

Argued and Submitted
November 18, 2014—Pasadena, California

Filed June 4, 2015

Before: Kim McLane Wardlaw and Richard A. Paez, Circuit Judges, and Michael A. Ponsor,[*] Senior District Judge.

Opinion by Judge Ponsor

## SUMMARY[**]

### Labor Law

The panel reversed the district court's (1) dismissal of a Title VII action as untimely and (2) denial of an application to proceed in forma pauperis.

The panel held that for purposes of the ninety-day filing limit set forth in 42 U.S.C. § 2000e-5(f)(1), the filing date of a complaint is the date it is delivered to the court clerk, whether it is submitted with or without an in forma pauperis application.

The panel further held that it is an abuse of discretion to deny an in forma pauperis application based upon a spouse's financial resources, unless there is a reasonable inquiry into (a) whether the spouse's resources are actually available to the would-be plaintiff and (b) whether the spouse in fact has sufficient funds, given his or her own expenses, to assist in paying the fee.

[*] The Honorable Michael A. Ponsor, Senior District Judge for the U.S. District Court for Massachusetts, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Katelin Eastman (argued) and Sarah Gerdes (argued), Pepperdine University School of Law, Ninth Circuit Appellate Advocacy Clinic, Malibu, California; Jeremy B. Rosen, Horvitz & Levy LLP, Encino, California, for Plaintiff-Appellant.

Melissa Leigh Griffin (argued) and Beth Freuchtenicht Aney, San Francisco, California, for Defendants-Appellees.

## OPINION

PONSOR, Senior District Judge:

Appellant Maria Escobedo, acting *pro se*, submitted her complaint, charging Appellee Apple Nevada with sexual harassment and discrimination, to the U.S. District Court for the District of Nevada on June 2, 2011. The complaint arrived at the clerk's office sixty-nine days after Escobedo received her right-to-sue letter from the Equal Employment Opportunity Commission, well within the ninety-day limit set forth in 42 U.S.C. § 2000e-5(f)(1).[1]

Along with her complaint, Escobedo filed an application to proceed *in forma pauperis* ("IFP"). Thirty-four days later, on July 6, 2011, outside the ninety-day deadline, a magistrate judge first heard argument on the application and erroneously denied it, based upon ungrounded assumptions regarding the

---

[1] This appeal originally included Apple American Group. However, as Escobedo's Amended Complaint named only Apple Nevada, Apple American Group is no longer a party to the suit.

availability of Escobedo's husband's resources. During the hearing, however, the magistrate judge told Escobedo that she would have an additional thirty days to pay the $350 fee. Escobedo paid the fee on August 5, 2011, within the allotted thirty days. Despite this, the district court subsequently dismissed her complaint for violating the ninety-day limitations period.

Escobedo (represented by counsel) contends, first, that the district court erred in dismissing her complaint as untimely and, second, that the magistrate judge erred in denying her IFP application. We agree on both points and reverse.[2]

We now hold that the filing date of a complaint is the date it is delivered to the clerk, whether it is submitted with or without an IFP application. Obviously, if an IFP application is submitted with the complaint in lieu of the filing fee, and the application is thereafter denied, the district court will be free to dismiss the complaint if the fee is not paid within a reasonable time following the denial. The filing date, however, will be the date on which the complaint was originally delivered to the clerk's office along with the IFP application.

---

[2] There are five motions pending in this case, and we deny them all; none of the material they identify was relied upon for purposes of this opinion. Appellant's Motion to File an Audio Cassette (Dkt. No. 20) and Motion for Judicial Notice (Dkt. No. 43) are denied because they are irrelevant to the issues before the court. Appellee's Motions for Judicial Notice (Dkt. Nos. 11 & 49) are denied as well because they are immaterial to our analysis; in addition, the issues they attempt to raise are not properly before the court. Finally, Appellee's last Motion for Judicial Notice (Dkt. No. 56) appears to be a duplicate of an earlier motion (Dkt. No. 49) and is, accordingly, denied.

We further hold that it is an abuse of discretion to deny an IFP application  based upon a spouse's financial resources, unless there is a reasonable inquiry into (a) whether the spouse's resources are actually available to the would-be plaintiff and (b) whether the spouse in fact has sufficient funds, given his or her own expenses, to assist in paying the fee.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Escobedo worked as a prep cook for seven years at an Applebee's restaurant in Las Vegas, Nevada owned by Apple Nevada.  On November 3, 2010, Escobedo reported to the Equal Employment Opportunity Commission (EEOC) that her employer had subjected her to sexual harassment, discrimination on the basis of her gender and national origin, and retaliation.  A review of her claims reveals that they could not, by any means, be characterized as frivolous. EEOC records apparently suggest that a letter may have gone out to Escobedo on December 16, 2010, containing a Notice of Right to Sue.  Escobedo never received it.  On January 30, 2011, Applebee's fired Escobedo.  In March 2011, concerned that she had not heard anything, Escobedo contacted the EEOC.  On March 25, 2011, the EEOC sent out, and Escobedo for the first time received, a copy of the Notice of Right to Sue[3]

---

[3] Apple Nevada argues that the March 25 date should be disregarded because Escobedo must be presumed, despite her disclaimer, to have received the earlier, December 16 letter within three days of its being sent. *See Schikore v. BankAmerica Supplemental Ret. Plan*, 269 F.3d 956, 961 (9th Cir. 2001) ("The mailbox rule provides that the proper and timely mailing of a document raises a rebuttable presumption that the document has been received by the addressee in the usual time.").  This argument has no merit.  Any presumption was rebutted when the district court

On June 2, 2011, sixty-nine days after receiving the right-to-sue letter, Escobedo submitted her *pro se* complaint to the U.S. District Court for the District of Nevada, bringing claims of sexual harassment and discrimination on the basis of gender and national origin against Applebee's.[4]  With her complaint, Escobedo filed an IFP application, in which she certified that she could not pay the filing fee for her complaint because of her poverty.  She stated in her application that she had income of $210 per week and paid $684 per month in rent, as well as $15 a month on existing credit card debts.  Given that these expenses left her with less than $150 per month for all other expenses, including food and medical costs, Escobedo contended that the $350 filing fee was sufficiently onerous that it should be waived.

On July 6, 2011, thirty-nine days after Escobedo filed her complaint, and 103 days after receiving her March 25 right-to-sue letter, Escobedo obtained a hearing before a magistrate judge on her IFP application.  When asked by the judge how she paid $684 per month for rent when she only received $180 a week[5] in unemployment compensation, Escobedo

---

accepted Escobedo's representation under oath that she had never received the first letter, and fixed March 25, 2011, as the jumping-off date for the calculation of the statute of limitations.  This factual finding was well supported by the record and within the district court's discretion. Moreover, as Apple Nevada recognizes, Escobedo is entitled to all reasonable inferences in her favor at the Rule 12(b)(6) stage.  Fed. R. Civ. P. 12(b)(6).

[4] Subsequently, Escobedo amended her complaint in September 2011 to include a claim for retaliation as well.

[5] An unexplained discrepancy exists between the weekly income Escobedo claimed in her written IFP application ($210) and the amount she claimed in open court during the hearing ($180).  There is no reason

replied that her husband helped with her housing expense. The magistrate judge next inquired into her husband's monthly income, which Escobedo stated was $1800 per month in social security benefits.  Based on this information and the amount of Escobedo's income, the magistrate judge denied Escobedo's IFP application.  The record does not reveal any inquiry by the magistrate judge as to whether her husband's financial resources were actually available to Escobedo (beyond the help with the cost of housing), or whether her husband had other offsetting legitimate expenses that would reduce or eliminate his ability to assist in paying the filing fee.

Following this, the magistrate judge set a deadline of August 5, 2011, for Escobedo to pay the fee.  In this portion of the hearing, the magistrate judge and Escobedo had the following ambiguous exchange:

**The Court:**

> All right.  Ms. Escobedo, what I'm going to do is deny the motion to proceed in forma pauperis.    Because of your household income, the Court is going to require you to pay the filing fee in this case.  Once you pay that filing fee, then the complaint will be filed and it can be served by you on the Defendant Applebees.

to think this minor discrepancy evidenced bad faith or deceitfulness.  In any event, the difference does not affect our analysis.

Obviously, you're aware that there may be a motion to dismiss your complaint by Applebees based on a failure to timely file. The Court cannot and will not address that issue until you serve Applebees and they're actually in the lawsuit to respond to that question. I will indicate and you see the letter already from the EEOC Commission that those requirements of filing dates are very firm and there will not be room to waive that if you've missed a filing date.

Now, today is the 6th of July. Can you pay that filing fee by August the 5th? That would be one month from now.

**The Plaintiff:**

How much would it be?

**The Court:**

I believe the filing fee now is $350.

**The Plaintiff:**

Very good.

**The Court:**

Okay. That'll be due then by August 5, 2011. If nothing's paid or filed by then,

then of course the case would be dismissed.

Escobedo managed to pay the filing fee on August 5, 2011, within the district court's time frame, but 133 days following the receipt of the right-to-sue letter. Even if the ninety-day clock were tolled during the thirty-four days while Escobedo's IFP application awaited a ruling (to which Applebees vigorously objects), Escobedo would still be nine days outside the ninety-day limitations period, if we were to agree with the lower court that the complaint could only be deemed "filed" once the fee was paid and not when it was first delivered to the clerk.

On March 8, 2012, Apple Nevada filed a motion to dismiss Escobedo's Amended Complaint. Escobedo filed a *pro se* opposition. On May 15, 2012, the district court heard argument on the motion and granted it both as to Escobedo's complaint and as to her amended complaint. The district court construed the complaint's filing date to be the date on which the filing fee was paid, August 5, 2011, and not the date the complaint was originally delivered to the clerk's office, June 2, 2011. Though accepting that the statute of limitations may have been tolled while the IFP application awaited a ruling, the district court found that, due to the time that had elapsed between the date of the magistrate judge's denial of the application and the date on which she paid the fee, Escobedo's complaint was actually filed nine days outside the statute of limitations period. Entry of judgment in favor of Apple Nevada followed.

Escobedo filed a timely appeal on May 24, 2012, and on October 22, 2013, our court appointed counsel. Along with the Pro Bono Order, we requested that the parties address the

relevance of the constructive filing rule, as explained in *Loya v. Desert Sands Unified Sch. Dist.*, 721 F.2d 279 (9th Cir. 1983), and as applied to an analogous situation in *Baker v. La Cumbre Mgmt. Co., Inc.*, 9 Fed. App'x 752 ([9th Cir.] 2001) (unpublished).  We have jurisdiction pursuant to 28 U.S.C. § 1291, which extends to an appeal of a final decision of a United States district court.

## II.  DISCUSSION

### A.  The Timeliness of Escobedo's Complaint

The dispute regarding the timeliness of Escobedo's complaint presents a question of law, which we review *de novo*.  *Mann v. Am. Airlines*, 324 F.3d 1088, 1090 (9th Cir. 2003); *Valenzuela v. Kraft*, *Inc.*, 801 F.2d 1170, 1172 (9th Cir. 1986).

As noted above, the district court assumed that the complaint in this case, despite its timely delivery to the clerk, could not be considered "filed" until the $350 fee had either been paid or waived as a result of a favorable ruling on the IFP application.  Although it recognized that the pendency of the IFP application tolled the statute of limitations up until the date the magistrate judge ruled—a point Apple Nevada takes issue with—the district court determined that the tolling ceased immediately upon the denial of the application, even though the magistrate judge granted Escobedo an additional thirty days to pay the fee.  Accordingly, since Escobedo paid the filing fee at least ninety-nine days after receipt of the EEOC's right-to-sue letter, the district court dismissed Escobedo's complaint as untimely.

The parties have largely cast their dispute as being over (1) whether Escobedo should be deemed to have "constructively" filed her complaint when she first delivered it along with the IFP application to the clerk's office, and (or alternatively) (2) whether the ninety-day limitations period should have been tolled *both* during the time between Escobedo's filing of her IFP application and the magistrate judge's ruling on it, *as well as* during the thirty days following the ruling—*i.e.*, the period the magistrate judge gave Escobedo to pay the fee.

Despite counsel's resourceful efforts, neither the "constructive" filing theory nor the "equitable tolling" analysis fits well with the facts of this case. Black's Law Dictionary defines "constructive" as "[l]egally imputed; existing by virtue of a legal fiction though not existing in fact." Black's Law Dictionary 356 (9th ed. 2009). Analysis of whether it is proper to deem something as "constructively" occurring can implicate equitable considerations—where there is a need, for example, to vindicate substantial justice— but this is not always, and probably not usually, the way the term is used. Black's Law Dictionary offers an example of a use of "constructive," where a shift supervisor is deemed to have "constructive" knowledge of a machine's failure even though he did not actually know about it until two days later. *Id.*

One of the cases that we asked the parties to address, *Loya*, provides a good example of the use of this kind of legal fiction. In that case plaintiff's complaint arrived within the limitations period, but the clerk rejected it because it was typed on 8½ by 13 inch paper, instead of 8½ by 11 inch paper. By the time the complaint arrived on the right-sized paper, the limitations deadline had passed, and the district

court dismissed it. We reversed, holding that "the district court should regard as 'filed' a complaint which arrives in the custody of the clerk within the statutory period but fails to conform with formal requirements in local rules." *Loya*, 721 F.2d at 281. Some touch of fiction was needed in *Loya* because the actual complaint arrived some time after its "constructive" filing date.

Similarly, in *Cintron v. Union Pacific Railroad Company*, 813 F.2d 917 (9th Cir. 1987), the clerk mailed back a timely complaint to counsel because it lacked two holes punched in the top, omitted a cover sheet, and arrived with a check for $99 instead of the correct fee, which was $60. By the time the attorney re-filed a revised document with the correct fee, the limitations period had run, and the district court dismissed the new complaint as untimely. Again, we reversed, stating that "[t]he consensus is that '[p]apers and pleadings including the original complaint are considered filed when they are placed in the possession of the clerk of the court.'" *Id*. at 920 (second alteration in original) (quoting Charles Wright & Arthur Miller, Federal Practice and Procedure § 1153 (1969), and citing *United States v. Dae Rim Fishery Co.*, 794 F.2d 1392 (9th Cir. 1986)). Based on this, we concluded that "the appellant constructively filed his complaint when . . . he delivered it to the clerk of the court, though he was not in compliance with local rules and though he overpaid the filing fee." *Id.* at 921. Again, it was understandable to talk about "constructive" filing in *Cintron* because the actual complaint physically arrived some time after the date it was deemed to have been filed.

Here, scant justification exists to invoke any "fiction." It is undisputed that the complaint was actually, physically delivered to the clerk on June 2, 2011, and was retained by

the clerk.  We are not called upon to contrast true reality "A" with imputed reality "B."  Rather, the task is to determine what, as a legal matter, occurred in the context of the actual facts.

This case offers facts much more like—indeed, identical to—the facts we examined in our unpublished decision in *Baker*.  There, the plaintiff filed his Title VII complaint within the ninety-day limitations period along with an IFP application.  The district court denied the petition on a date outside the limitations deadline, the plaintiff paid the fee, and the district court thereafter dismissed the complaint as untimely.  Our brief disposition made no reference to "constructive" filing—it did not need to—but merely held that the complaint had been filed when originally delivered to the clerk.  This simpler and more sensible approach comports with the facts now before this court and therefore is the one we approve here.

Arguments regarding the justification for "tolling" the running of a limitations period are, of course, frequently encountered, and—in contrast to situations where courts consider whether something has "constructively" occurred—issues of equity lie at their heart.  *See United States v. Kwai Fun Wong*, 135 S. Ct. 1625 (2015) (recognizing that "a court usually may pause the running of a limitations statute in private litigation when a party has pursued his rights diligently but some extraordinary circumstance prevents him from meeting a deadline" (internal quotations omitted)).  If Escobedo needed to invoke the doctrine of equitable tolling here, she would, given her diligence, have an overpowering argument.  But invocation of the doctrine is unnecessary.  Unlike *Kwai Fun Wong*, where delay by the court rendered a claim untimely despite the plaintiff's diligence, the simple

fact is that Escobedo filed her complaint in this case well prior to the deadline. No tolling is necessary.

We begin with the basics. Federal Rule of Civil Procedure 3 states that "[a] civil action is commenced by filing a complaint with the court." A related statutory provision, 28 U.S.C. § 1914(a) provides that "[t]he clerk of each district court shall require the parties instituting any civil action . . . to pay a filing fee of $350." Section 1915(a)(1) allows federal courts to authorize commencement of a suit "without prepayment of fees or security therefor, by a person who submits an affidavit" demonstrating "that the person is unable to pay such fees or give security therefor." *See Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1177 (9th Cir. 2003) (citing § 1915 and stating that "plaintiffs in all types of cases may be exempt from paying court fees upon a showing of indigence").

Nothing in § 1914 or § 1915 contradicts the simple directive set forth in Rule 3 that a civil action is commenced by filing a complaint with the court. As with other pleadings and papers, a complaint is filed "by delivering it . . . to the clerk." Fed. R. Civ. P. 5(d)(2). No justification exists to alter the definition of "filing" simply because a complaint is submitted to the clerk's office along with an IFP application.

The district court's ruling that the statute of limitations will be tolled while a plaintiff's IFP application is pending is in line with the approach employed by other circuits. *See Truitt v. Cnty. of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998) (holding that "the ninety-day period should be tolled during the pendency of a plaintiff's IFP application"); *Jarrett v. US Sprint Commc'ns Co.*, 22 F.3d 256, 259 (10th Cir. 1994) (noting that constructive filing "exists until the IFP motion is

ruled upon" and that a plaintiff should be entitled to "a 'grace period' in which to pay the filing fee" after a denial); *see also Williams-Guice v. Bd. of Educ. of Chicago*, 45 F.3d 161, 165 (7th Cir. 1995) (Easterbrook, J.) (recognizing that the limitations period "remains in suspension for a reasonable time—perhaps a time defined by local rules—after the district court's order" denying an application to proceed IFP).

A necessary corollary to the rule that a complaint will be deemed filed at the time it is delivered to the clerk with an IFP application, and that no time will be deducted from any limitations period while the application awaits a ruling, is that a would-be plaintiff must be given a reasonable time after a denial of an application to pay the fee. The *Williams-Guice* and *Jarrett* decisions explicitly recognize this, and any other approach would be untenable. For better or worse, it is far from uncommon for litigants, rich and poor, to tender complaints at or near the outer limit of the statute of limitations—sometimes on the day before the statute is due to run. In these cases, a subsequent denial of the IFP application, perhaps (as here) weeks later, without a reasonable opportunity to assemble the funds to pay the fee, would be grossly unfair. Escobedo delivered her complaint in a timely manner, accompanied by an IFP application submitted in good faith, but found herself barred from access to the court by an arbitrary trip wire arising purely from her need for reasonable time to gather the funds to pay the fee after her IFP application was denied.

Some uncertainty might hypothetically arise regarding what period of time would be "reasonable" to permit a plaintiff to pay the fee following denial of the IFP application. That problem does not infect this case. The

magistrate judge explicitly established a reasonable deadline of thirty days, and Escobedo complied with it.

The authority governing when a notice of appeal is timely provides a helpful analogy. In *Parissi v. Telechron, Inc.*, the Supreme Court reversed the dismissal of a notice of appeal as untimely where the notice was received within the thirty-day window, but the $5 fee was paid outside that period. 349 U.S. 46, 47 (1955). The court found that late payment of the filing fee "did not vitiate the validity of petitioner's notice of appeal." *Id.*; *see also Klemm v. Astrue*, 543 F.3d 1139, 1142 (9th Cir. 2008) (recognizing that a notice of appeal was timely filed when placed in the hands of the clerk's office whether unaccompanied by a filing fee, or accompanied by a postdated check); *Gee v. Tenneco, Inc.*, 615 F.2d 857, 859 (9th Cir. 1980) (recognizing as timely a notice of appeal filed within the prescribed time limit but where the fee was paid after the time expired).

Given this background, the resolution of this case emerges as simple. Escobedo filed her complaint when she delivered it to the clerk's office along with her IFP application. Once the application was denied, she was entitled to a reasonable time to pay the fee. Because she paid the fee before the deadline set by the magistrate judge, her complaint should not have been dismissed as untimely.

## B.  The Denial of Escobedo's IFP Application

Denials of IFP applications are reviewed for abuse of discretion.[6]  *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).  When the district court  applies the correct law to facts that are not clearly erroneous but rules in an irrational manner, it may be viewed as having abused its discretion. *Chang v. United States*, 327 F.3d 911, 925 (9th Cir. 2003). Similarly, when a district court rules on an issue without giving a party an opportunity to explain, or without adequate support on the record, it has abused its discretion.  *See Alexander v. Carson Adult High Sch.*, 9 F.3d 1448, 1450 (9th Cir. 1993) (reversing and remanding the dismissal of a complaint where district court did not give prisoner plaintiff the opportunity to explain the drop in funds in his account); *cf. Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1260 (9th Cir. 2010) (finding that the district court abused it discretion where "without support in the record, it summarily denied" the plaintiff's timely motion for an extension).

---

[6] Apple Nevada contends as a threshold matter that this issue is not properly before the court either because Escobedo should have appealed the denial within thirty days of the order, pursuant to Fed. R. App. P. 4(a)(1)(A), or because Apple Nevada was not a party to the suit at the time of the denial and thus lacks standing to defend the ruling.  Neither of Apple Nevada's arguments holds any water.  While Escobedo perhaps could have appealed the denial of her IFP application at an earlier point, she was not required to do so.  An appeal from a final judgment encompasses all antecedent orders. *See Firestone Time & Rubber Co. v. Risjord*, 449 U.S. 368, 373–74 (1981).  Furthermore, Apple Nevada's supposed "lack of standing" does not deprive Escobedo of the right to review before this court.  Of course, Apple Nevada was not obligated to defend the district court's denial of Escobedo's IFP application, if it truly felt it lacked standing. It could have remained silent on the issue, which it certainly has not.

Pursuant to 28 U.S.C. § 1915(a), a plaintiff may commence an action without paying the filing fees where she submits an affidavit stating that she lacks sufficient funds and where her suit is not frivolous or malicious.[7] *Franklin v. Murphy*, 745 F.2d 1221, 1226 (9th Cir. 1984). An affidavit in support of an IFP application is sufficient where it alleges that the affiant cannot pay the court costs and still afford the necessities of life. *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948). The IFP statute does not itself define what constitutes insufficient assets. As this court has recognized, "[o]ne need not be absolutely destitute to obtain benefits of the in forma pauperis statute." *Jefferson v. United States*, 277 F.2d 723, 725 (9th Cir. 1960). Nonetheless, a plaintiff seeking IFP status must allege poverty "with some particularity, definiteness and certainty." *United States v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981) (internal quotation marks omitted).

Two compelling questions arise from the denial of Escobedo's IFP petition.[8] First, when are an individual's

---

[7] The district court did not deny the IFP application on this ground; as noted above, Escobedo's lawsuit is in no way frivolous or malicious.

[8] Apple Nevada argues that Escobedo's complaint should be dismissed because her allegations of poverty are untrue. *See* 28 U.S.C. § 1915(e)(2) (providing that "[n]otwithstanding any filing fee . . . that may have been paid, the court shall dismiss the case at any time if the court determines that – (A) the allegation of poverty is untrue"). In her application for IFP status, Escobedo averred that she paid "rent," which Apple Nevada contends was untruthful since she and her husband owned their house. The argument is without merit. To dismiss Escobedo's complaint pursuant to § 1915(e)(2), a showing of bad faith is required, not merely inaccuracy. The scanty offering by Apple Nevada on this point suggests that Escobedo's allegations regarding her amount of "rent" were not significantly different from what Apple Nevada concedes she paid for her

assets and income too limited to pay the filing fee? *See* 28 U.S.C. § 1915(a)(1). Second, how should a court go about determining whether the assets of a litigant's spouse may be considered in reviewing an IFP application?

In this case, the $350 fee represented roughly forty percent of Escobedo's monthly income *before* expenses. Once her rent and debt payments were taken into account, she would have had to dedicate the entirety of two-months' worth of her remaining funds, meaning that she would have to forego eating during those sixty days, to save up to pay the filing fee.

As noted above, there is no formula set forth by statute, regulation, or case law to determine when someone is poor enough to earn IFP status. Whatever the standard, $350 is a lot of money to many millions of Americans. A person working full-time at a minimum wage job will, with the normal deductions, likely take home less than $350 in a typical forty-hour week.

In commenting on the required payment of only a $30 fee in a different context, Judge David Hamilton has noted that while this amount "may not seem like much to the governing class in our society, including lawyers and judges, it is for too

---

mortgage. No significant misrepresentation was made regarding Escobedo's expenses. Moreover, nothing in the record suggests Escobedo had any equity in her home, a telling omission since, as Escobedo's counsel points out, large numbers of homes in Nevada were "under water" in 2011. Finally, the evidence on which Apple Nevada's flimsy allegations rely is not properly before court. *See United States v. Walker*, 601 F.2d 1051, 1054 (9th Cir. 1979) (stating that the court will not permit a party to augment the record and to present evidence to this court that was not before the district court).

many people a vital amount of cash." *Markadonatos v. Village of Woodridge*, 739 F.3d 984, 1000 (7th Cir. 2014) (Hamilton, J., dissenting) (describing how a $30 fee represented the "average allotment under the federal Food Stamp program . . . to help feed an adult for a week" as well as the wages for more than a half day of work under the federal minimum wage), *rehearing en banc granted, opinion vacated*, 760 F.3d 545 (7th Cir. 2014).

If we were to consider only the monies coming to Escobedo herself, as set forth in her affidavit in support of her IFP application, we would have no hesitation in concluding that the magistrate judge's denial of the application constituted an abuse of discretion. Escobedo was plainly indigent, and her application should have been allowed. Even taking into account the income of both Escobedo and her husband—assuming the husband's income was properly assessed, which for the reasons set forth below we find it was not—the magistrate judge's ruling represented, at best, the outer boundary of stringency. Including Escobedo's husband's income with hers, the filing fee would still be twenty-six percent of Escobedo's communal property share of the family's monthly income and thirteen percent of the total monthly family income.

Apple Nevada, in defending the magistrate judge's ruling, suggests a benchmark of twenty percent of monthly household income. Only when this percentage of available funds is exceeded, it argues, should the IFP petition be allowed. Significantly, this benchmark comes from 28 U.S.C. § 1915(b)(1), which dictates that a court shall calculate a *prisoner's* monthly contribution toward payment of the full filing fee based on twenty percent of the prisoner's monthly income while incarcerated. Twenty percent of

Escobedo's household income (including all her husband's income) is above the $350 filing fee, a fact that Apple says supported denial of the application.

The simple response to this contention is that prisoners have limited overhead. Though twenty percent may be an appropriate measure for a person who is incarcerated, it is inappropriate for someone like Escobedo, who must pay for the roof over her head and the food on her table or go without shelter and sustenance. *See Olivares v. Marshall*, 59 F.3d 109, 112 (9th Cir. 1995) (recognizing that district courts may consider a prisoner's choice in how to spend money as he has many amenities "furnished by the prison," while cautioning that financial circumstances must be re-evaluated upon parole).

The question whether Escobedo's husband's social security income should have been included in the evaluation of the IFP application would be difficult under any circumstances. Here, the question is unanswerable due to omissions in the record that should have been explored by the magistrate judge at the IFP hearing. It is true, of course, that spouses often share their respective incomes. In such a case it might be appropriate to consider a spouse's income as part of the analysis leading to the ruling on the IFP application. In many cases, however, the marital arrangement may, for good reason, not include sharing income, or a spouse will have his or her own expenses (child support, say, for children of a prior marriage) with little or nothing left over to share. For any number of reasons, one spouse's funds may simply not be available to the other spouse. *See Lee v. McDonald's Corp.*, 231 F.3d 456, 459 (8th Cir. 2000) (remanding for reassessment of the plaintiff's ability to pay court fees

"excluding those assets to which [the plaintiff] has no legal entitlement").

None of that was explored here.  Given this, it was an abuse of discretion for the magistrate judge to include Escobedo's husband's income in the calculation of whether she could afford the filing fee.  While the magistrate judge was entitled to consider what access Escobedo had to other assets, *see McQuade*, 647 F.2d at 940 (stating that it is "within the court's discretion to make a factual inquiry" into a claim of poverty), it cut off the inquiry too soon.  If Escobedo's husband's assets were to be weighed, so too should his expenses and other liabilities.  *See Alexander*, 9 F.3d at 1450 (remanding to give plaintiff the opportunity to explain the sudden depletion of his account).

## III.  CONCLUSION

Escobedo's complaint was filed for purposes of the statute of limitations when she delivered it to the clerk's office along with her IFP application.  Since it was filed on time, it should not have been dismissed for violation of the ninety-day statute of limitations.  Moreover, the magistrate judge's ruling denying the IFP application lacked adequate foundation.  Where a court wishes to rely on the income or assets of a litigant's spouse to assess eligibility for IFP status, a reasonable inquiry into the actual availability of the spouse's assets must be made.  We reverse and remand to the district court for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**