**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| NATIONAL LABOR RELATIONS BOARD, | No. 17-73210 |
| *Petitioner*, | |
| | NLRB No. 21-CC-183510 |
| v. | |
| INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL, ORNAMENTAL, AND REINFORCING IRON WORKERS, LOCAL 229, AFL-CIO, | OPINION |
| *Respondent.* | |

On Petition for Review of an Order of the
National Labor Relations Board

Argued and Submitted February 15, 2019
San Francisco, California

Filed October 28, 2019

Before: Mary M. Schroeder and Johnnie B. Rawlinson,
Circuit Judges, and Robert S. Lasnik,[*] District Judge.

Opinion by Judge Rawlinson

---

[*] The Honorable Robert S. Lasnik, United States District Judge for the Western District of Washington, sitting by designation.

## SUMMARY[**]

### Labor Law

The panel granted the National Labor Relations Board's petition for enforcement of its order entered against International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers, Local 229, enjoining Local 229 from committing violations of the National Labor Relations Act ("NLRA").

The Board affirmed the administrative law judge's finding that Local 229 had violated Section 8(b)(4)(i)(B) of the NLRA by inducing or encouraging Commercial Metals Company's neutral employees to strike or stop work for the unlawful secondary purpose of furthering Local 229's primary labor dispute with Western Concrete Pumping.

The panel rejected Local 229's contention that the Board's application of the NLRA to its conduct punished expressive activity protected by the First Amendment. Specifically, the panel refused to extend the Supreme Court's decision in *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), and refused to apply strict scrutiny to the analysis of Section 8(b)(4)(i)(B). The panel explained that *Reed* involved content-based restrictions in a municipal ordinance regulating signs directed toward the general public, whereas this case involved communications addressed to neutral employees within the tightly regulated contours of labor negotiations.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the Board reasonably rejected Local 229's contention that Section 8(c) of the NLRA protected its communications because the Supreme Court has concluded that Section 8(c) does not immunize activities that violate Section 8(b)(4).

The panel held that the Board properly rejected the challenges asserted by Local 229 under the Religious Freedom Restoration Act and under the Thirteenth Amendment to the United States Constitution.

Finally, the panel held that the language of the Board's order adequately apprised Local 229 of its notice obligations.

**COUNSEL**

Greg P. Lauro (argued), Attorney; Elizabeth A. Heaney, Supervisory Attorney; Linda Dreeben, Deputy Associate General Counsel; John W. Kyle, Deputy General Counsel; Peter B. Robb, General Counsel; National Labor Relations Board, Washington, D.C.; for Petitioner.

David A. Rosenfeld (argued), Weinberg Roger & Rosenfeld, Alameda, California, for Respondent.

**OPINION**

RAWLINSON, Circuit Judge:

The National Labor Relations Board (Board) petitions for enforcement of an order entered by the Board against the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers, Local 229 (Local 229) to "[c]ease and desist from inducing or encouraging" certain persons "to engage in a strike or a refusal to perform work in the course of employment," in order to force various companies to "cease doing business with Western Concrete Pumping, Inc.," in violation of Section 8(b)(4)(i)(B) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(b)(4)(i)(B).

Local 229 opposes enforcement of the order, asserting that the Board's application of Section 8(b)(4)(i)(B) violates the First Amendment. Local 229 contends, alternatively, that its statements are protected under Section 8(c) of the NLRA, 29 U.S.C. § 158(c), the Religious Freedom Restoration Act (RFRA), 42 U.S.C. §§ 2000bb *et seq.*, and the Thirteenth Amendment of the United States Constitution. Local 229 also seeks clarification of the notice requirement in the Board's order.

We grant the petition to enforce the Board's order, which is supported by substantial evidence that Local 229 violated Section 8(b)(4)(i)(B).

## I.  Background

The underlying facts in this case are undisputed. McCarthy Building Companies, Inc. (McCarthy), a general

contractor, subcontracted with Western Concrete Pumping (WCP) and Commercial Metals Company (CMC) to perform work in connection with the construction of a parking structure for a casino in Temecula, California. Local 229 and Operating Engineers Local 12 (Local 12) engaged in a labor dispute with WCP over allegedly substandard wages. Local 12 lawfully picketed at the jobsite solely against WCP from August to November, 2016.

During the latter half of August, Local 229's business agent, James Alvernaz (Alvernaz), appealed to CMC's neutral employees specifically to induce or encourage a secondary boycott of CMC in support of Local 229's labor dispute with WCP. Alvernaz texted CMC employees a link to a webpage titled "Picket Line Etiquette," with a "No Picket Lines" symbol encircled by the phrase "FRIENDS DON'T LET FRIENDS CROSS." Alvernaz also called a CMC employee to encourage the employee not to perform work for CMC in solidarity with Local 229. Finally, Alvernaz spoke with CMC employees at the jobsite on two occasions, and placed copies of a flyer entitled "Picket Line Etiquette," in their lunchboxes.

CMC filed a charge against Local 229 for engaging in an unfair labor practice by inducing or encouraging CMC's neutral employees to strike or stop work for the unlawful secondary purpose of furthering Local 229's primary labor dispute with WCP. An Administrative Law Judge (ALJ) found that Local 229 had violated Section 8(b)(4)(i)(B) of the NLRA and recommended that the Board enter a cease and desist order. The Board affirmed the ALJ's factual findings and rejection of Local 229's constitutional and statutory arguments. The Board adopted a modified version of the

ALJ's recommended cease and desist order, which it now seeks to enforce.

## II. Standards of Review

We uphold a decision of the Board if the findings of fact are supported by substantial evidence and if the agency correctly applied the law. *See United Nurses Ass'ns of Cal. v. NLRB*, 871 F.3d 767, 777 (9th Cir. 2017).

Although we defer to the Board's reasonable interpretation of the NLRA, *see id.*, we do not defer to the agency's interpretation of constitutional provisions, *see Overstreet v. United Bhd. of Carpenters & Joiners of Am., Local Union No. 1506*, 409 F.3d 1199, 1209 (9th Cir. 2005). We similarly review *de novo* an agency's interpretation of a statute outside its administration and expertise—in this case, the RFRA. *See Am. Fed'n of Gov't Emps., AFL-CIO, Council 147 v. Fed. Labor Relations Auth.*, 204 F.3d 1272, 1275 (9th Cir. 2000).

Because "[t]he Board is vested with broad discretion to devise remedies that effectuate the policies of the [NLRA]," we review a remedial order only for a "clear abuse of discretion," such that the Board's remedial order should stand unless "the order is a patent attempt to achieve ends other than" effectuating the policies of the NLRA. *United Nurses*, 871 F.3d at 377 (citations and internal quotation marks omitted).

## III.   Discussion

It is an unfair labor practice under the NLRA for a labor organization or its agents to "induce or encourage any

individual employed by any person engaged in commerce . . . to engage in[] a strike or a refusal . . . to perform any services . . . [where an] object thereof is . . . forcing or requiring any person . . . to cease doing business with any other person . . ." 29 U.S.C. § 158(b)(4)(i)(B). Stated differently, a union may not exert pressure on employees of a neutral employer to strike against that secondary employer for the purpose of increasing the union's leverage in its dispute against the primary employer. *See Int'l Longshoremen's Ass'n, AFL-CIO v. Allied Int'l, Inc.*, 456 U.S. 212, 222–23 & n.20 (1982) (describing this action as a "secondary boycott").

Local 229 concedes that it violated Section 8(b)(4)(i)(B), and that substantial evidence supports its concession. Nevertheless, Local 229 asserts a number of constitutional and statutory challenges to the Board's application of Section 8(b)(4)(i)(B).

Initially, Local 229 contends that the Board's application of the statute to its conduct punished expressive activity protected by the First Amendment. Specifically, Local 229 invites us to extend the Supreme Court's decision in *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), to apply strict scrutiny to the analysis of Section 8(b)(4)(i)(B).

Prior to its decision in *Reed*, the Supreme Court addressed the constitutionality of a prior version of Section 8(b)(4)(i)(B) in *International Brotherhood of Electrical Workers v. NLRB* (*IBEW*), 341 U.S. 694 (1951). Without applying strict scrutiny, the Supreme Court concluded that even peaceful picketing violates the NLRA's prohibition on secondary boycotts, and held that the prohibition "carries no unconstitutional abridgment of free speech." *Id.* at 699–700, 705. Contrary to Local 229's contention that *IBEW*'s holding

addresses only picketing, and not speech, the Supreme Court concluded that "[t]he words 'induce or encourage' are broad enough to include in them every form of influence and persuasion," *id.* at 701–02, in order to prevent the "substantive evil . . . [of] the secondary boycott." *Id.* at 705. The Court explained that "[i]t was the objective of the unions' secondary activities and not the quality of the means employed to accomplish that objective, which was the dominant factor motivating Congress in enacting that provision." *Id.* at 704 (citation, alteration, and internal quotation marks omitted). The Court recognized that while the statute's remedial provision, Section 8(c), "protect[s] noncoercive speech by employer and labor organization alike in furtherance of a lawful object," such protection does not extend to "*speech or picketing* in furtherance of unfair labor practices such as are defined in § 8(b)(4)." *Id.* (emphasis added).

The two circuits to address the First Amendment implications of Section 8(b)(4)(i)(B) in the context of pure speech have applied *IBEW* to hold that the "First Amendment is not at all implicated" when activities prohibited by Section 8(b)(4)(i) are proscribed. *Warshawsky & Co. v. NLRB*, 182 F.3d 948, 952 (D.C. Cir. 1999). The District of Columbia Circuit expressly held that "the First Amendment does not protect communications directed at—and only at—the neutral employees merely because the form of communications is handbilling and conversations." *Id.* (footnote reference omitted). The Second Circuit rejected the same First Amendment argument that Local 229 now makes, holding that "[i]t is thus clear that the [*IBEW*] Court which rejected First Amendment objections to § 8(b)(4) had 'speech' as well as 'picketing' inducements in mind." *NLRB*

*v. Local Union No. 3, Int'l Bhd. of Elec. Workers*, 477 F.2d 260, 266 (2d Cir. 1973).

There have been no changes to First Amendment jurisprudence in the interim that warrant divergence from the Supreme Court's analysis in *IBEW* or the interpretation of *IBEW* in the decisions from the District of Columbia and Second Circuits. We are not persuaded that *Reed* can carry the weight that Local 229 ascribes to the decision. *Reed* involved content-based restrictions in a municipal ordinance regulating signs directed toward the general public. S*ee* 135 S.Ct. at 2225–26. In contrast, this case involves communications addressed to neutral employees within the highly regulated contours of labor negotiations. *See IBEW*, 341 U.S. at 702–04. Moreover, we think it highly unlikely that the Supreme Court would have limited or implicitly overruled the detailed analysis of the NLRA in *IBEW* without even mentioning *IBEW* in its *Reed* decision. *See Agostini v. Felton*, 521 U.S. 203, 237 (1997) (cautioning lower courts against concluding that its more recent cases implicitly overruled earlier precedent); *see also United States v. Garcia*, 768 F.3d 822, 831 (9th Cir. 2014) ("[W]e have expressed a . . . reluctance to abandon Supreme Court precedent on the premise that a subsequent case has effected an implicit overruling of earlier Supreme Court precedent.").

Local 229's reliance on *Edward J. DeBartolo Corp. v. Florida Gulf Coast Building and Construction Trades Council*, 485 U.S. 568 (1988), is misplaced. *DeBartolo* addressed the issue of whether a different provision of the statute, Section 8(b)(4)(ii), protected handbills urging *consumers* to lawfully boycott a neutral employer. *See id.* at 581–82. *DeBartolo* did not address speech whose object was to encourage or induce the "substantive evil [of] the

secondary boycott" by neutral employees that Section 8(b)(4)(i)(B) prohibits, and therefore did not disturb the holding of *IBEW*. 341 U.S. at 705.

Alternatively, Local 229 asserts that Section 8(c) of the NLRA protects its communications. Section 8(c) provides that "[t]he expressing of any views, argument, or opinion, or the dissemination thereof . . . shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or promise of benefit." 29 U.S.C. § 158(c).

The Board reasonably rejected Local 229's contention because the Supreme Court has concluded that Section 8(c) does not immunize activities that violate Section 8(b)(4). In *IBEW*, the Court definitively and undeniably rejected the notion that activities proscribed by Section 8(b)(4) could escape prohibition through application of Section 8(c), including the following reasoning:

> There is nothing in the language or legislative history of section 8(c) which indicates persuasively a Congressional intent to create an asylum of immunity from the proscription of section 8(b)(4)[] for secondary boycotts. 341 U.S. at 701 n.6.

> The legislative history does not sustain a congressional purpose to outlaw secondary boycotts under [Section] 8(b)(4) and yet in effect to sanction them under [Section] 8(c). *Id.* at 704.

The remedial function of [Section] 8(c) is to protect noncoercive speech by employer and labor organization alike in furtherance of a lawful object.   It serves that purpose adequately without extending its protection to speech or picketing in furtherance of unfair labor practices such as are defined in [Section] 8(b)(4).    The general terms of [Section] 8(c) appropriately give way to the specific provisions of [Section] 8(b)(4).  *Id.* at 704–05.

We similarly conclude that the Board properly rejected the challenges asserted by Local 229 under the RFRA and under the Thirteenth Amendment to the United States Constitution.  Local 229's bald assertion that its rights under the RFRA were violated, fails to sufficiently demonstrate that prohibiting the union's inducement and encouragement of neutral employees to engage in a secondary boycott substantially burdened its exercise of religion. *See Oklevueha Native Am. Church of Haw., Inc. v. Lynch*, 828 F.3d 1012, 1016–18 (9th Cir. 2016) (affirming summary judgment against plaintiffs where there was no evidence of a substantial burden on the exercise of their religious beliefs when they were denied the use of cannabis).

Local 229's contention that Section 8(b)(4)(i)(B) runs afoul of the Thirteenth Amendment's prohibition on involuntary servitude, is "patently groundless," particularly in light of Local 229's concession that "under § 8(b)(4), employees are free to leave the job." *Printing Specialties & Paper Converters Union, Local 388 AFL v. LeBaron*, 171 F.2d 331, 334 & n.2 (9th Cir. 1948) (rejecting similar

argument that the NLRA's prohibition on secondary boycotts is tantamount to involuntary servitude).

Finally, we hold that the language of the order adequately apprised Local 229 of its notice obligations. As Local 229 conceded, the language used in the Board's order has been standard for over fifteen years.

## IV.    Conclusion

Substantial evidence supports the Board's finding that Local 229 violated Section 8(b)(4)(i)(B) of the NLRA. Accordingly, we GRANT the Board's application for enforcement of its order.[1]

**PETITION TO ENFORCE GRANTED.**

---

[1] We **DENY** Local 229's motion for judicial notice. *See Escobedo v. Applebees*, 787 F.3d 1226, 1228 n.2 (9th Cir. 2015) (denying request for judicial notice because, *inter alia*, documents were immaterial to the court's analysis).